The above-entitled action was begun in the Superior Court of Wake County, on 29 August, 1929, to recover sums of money paid by the plaintiffs to the defendant, Commissioner of Revenue of North Carolina, as license taxes for the privilege of engaging in business in this State as branch or chain store operators, for the twelve months beginning on 1 June, 1929, and ending on 31 May, 1930. The taxes were levied and collected by defendant from each of the plaintiffs under and by virtue of the provisions of section 162 of chapter 345, Public Laws of North Carolina, session 1929. In accordance with the provisions of the statute, a State License was issued to each of the plaintiffs, under which said plaintiff has engaged in the business in this State authorized thereby.
Chapter 345, Public Laws of North Carolina, session 1929, is entitled "An Act to Raise Revenue." The said act contains a section, which is in the following words:
"Section 443. State Taxes. No ad valorem tax on any property in this State shall be levied for any of the uses of the State government. The taxes levied in this act are for the expenses of the State government, the appropriations to its educational, charitable and penal institutions, pensions for Confederate soldiers and widows, the interest on the debt of the State, an equalizing fund for public schools, and other specific appropriations made by law, and shall be collected and paid into the general fund of the State Treasurer."
Section 162 of said act is included in Schedule B, which is Article II of said act, entitled "License Taxes." It is provided in said article that "taxes in this article or schedule shall be imposed as a State license tax for the privilege of carrying on the business, exercising the privilege, or doing the act named." The said section is in words as follows:
"Section 162. Branch or Chain Stores. Every person, firm, or corporation engaged in the business of operating or maintaining in this State, under the same general management, supervision or ownership, two or more stores or mercantile establishments, where goods, wares, and/or merchandise is sold or offered for sale at retail shall be deemed a branch or chain store operator, shall apply for and obtain from the Commissioner of Revenue a State license for the privilege of engaging *Page 435 
in such business of a branch or chain store operator, and shall pay for such license fifty dollars ($50.00) on each and every store operated in this State in excess of one."
Each of the plaintiffs, whether a person, a firm or a corporation, is a branch or chain store operator as defined in said section, and as such, at the time payment of the tax was demanded by the defendant, was, by the terms of said section, liable for the sum demanded as a license tax for the privilege of carrying on said business in this State. Payment of the sum demanded was made by each of the plaintiffs, under protest in writing, on the ground that the statute, under the provisions of which the tax was demanded, is void for that it was enacted in violation of both section 3 of Article V of the Constitution of North Carolina, and section 1 of the Fourteenth Amendment to the Constitution of the United States.
This action was thereafter begun to recover of the defendant the sums paid by the plaintiffs, respectively, under the provisions of section 464, chapter 345, Public Laws of North Carolina, session 1929. It was agreed by and between plaintiffs and defendant, that plaintiffs might join in one action, instead of bringing numerous separate actions, and that defendant would waive compliance by plaintiffs with certain provisions of said section, with respect to demand for the refund of said sums, prior to the commencement of this action.
When the action was called for trial, it was stipulated and agreed by and between the parties that all issues of fact arising on the pleadings should be determined by the court, without the intervention of a jury. The court thereupon heard the evidence offered by the plaintiffs, and, defendant having offered no evidence, from this evidence found the facts set out in the judgment. Upon these facts, the court was of opinion, and so found, "The classification of plaintiffs' business for the purpose of the license, business or occupation tax imposed by section 162 of chapter 345, Public Laws of North Carolina, session 1929, is neither arbitrary nor unreasonable, is not a violation of the State or Federal Constitution, but said license, privilege or occupation tax is imposed by uniform rule, does not deprive plaintiffs of their property without due process of law or deny them the equal protection of the law."
It was, thereupon, considered, ordered and adjudged that section 162 of chapter 345, Public Laws of North Carolina, session 1929, is not void, but is valid and constitutional; that plaintiffs take nothing by this action, and that defendant go hence without day, and recover his costs to be taxed by the clerk of the court.
From this judgment plaintiffs appealed to the Supreme Court. *Page 436 
The principal question presented by this appeal, as stated in the brief filed for plaintiffs in this Court, is, whether section 162 of chapter 345, Public Laws of North Carolina, session 1929, was enacted by the General Assembly of this State in violation of provisions of the Constitution of North Carolina, or of the Constitution of the United States, as contended by plaintiffs. If there was error in the opinion of the court below that the section is valid and constitutional, the judgment in accordance with said opinion must be reversed; otherwise, the judgment must be affirmed. The questions presented by plaintiff's assignments of error based on their exceptions with reference to the findings of fact by the court, are not determinative of the appeal, and in the view which we take of the principal question presented for decision, need not be discussed or decided. It is admitted in the answer filed by the defendant that the section of the statute involved in this action was enacted by the General Assembly solely for the purpose of raising *Page 437 
revenue for the use of the State. An examination of chapter 345, Public Laws of North Carolina, session 1929, which includes this section, shows clearly and unmistakably, we think, that defendant properly admitted the allegation of the complaint that "said statute is a revenue act, pure and simple. It was not intended to promote morality, health, or public order." There is nothing on the face of the statute, or in the findings of fact made by the court and pertinent to a decision of the question involved in this action, which shows or tends to show that the statute, or any section thereof, was enacted by the General Assembly in the exercise of the police power inherent in the Government of this State. Nor is there anything in the record from which a purpose can be inferred on the part of the General Assembly, by the enactment of section 162 of chapter 345, Public Laws of 1929, to subject operators of branch or chain stores in this State to the police power. It is therefore immaterial for the purpose of deciding the question presented by this appeal whether chain stores are beneficial to the public or not. The question is whether operators of such stores may be lawfully taxed for the privilege of engaging in business in this State, as provided in section 162 of chapter 345, Public Laws 1929.
The policy of the State of North Carolina with respect to raising revenue for State purposes is well settled. It is provided in section 3 of Article V of the Constitution of this State that "laws shall be passed taxing by a uniform rule, all moneys, credits, investments in bonds, stocks, joint-stock companies, or otherwise; and also, all real and personal property according to its true value in money." It is further provided in said section that "the General Assembly may also tax trades, professions, franchises, and incomes." The rate of the tax on incomes is limited in said section to 6 per cent, and certain exemptions with respect to said tax are expressly allowed. It is provided in section 6 of said article that "the total rate of the State and county tax on property shall not exceed fifteen cents on the one hundred dollars value of property except when the county property tax is levied for a special purpose, and with the special approval of the General Assembly, which may be done by special or general act: Provided, this limitation shall not apply to taxes levied for the maintenance of public schools for the term required by Article nine, section three, of the Constitution; Provided further, the State tax shall not exceed five cents on the one hundred dollars value of property." It is clear that when the Constitution of the State was amended in 1920, by striking out section 6, as it was prior to said amendment and substituting therefore the present section 6, limiting the rate of taxation on property for State purposes other than the maintenance of the public schools to five cents on the one hundred dollars valuation, it was contemplated that the General Assembly would *Page 438 
adopt the policy, which it has since pursued, of raising revenue required for State purposes by taxing trades, professions, franchises, and incomes, leaving to the counties and municipalities of the State, for their support, the tax on property, real and personal. Section 443 of chapter 345, Public Laws of 1929, was enacted pursuant to this policy. It is provided therein that "no ad valorem tax on any property in the State shall be levied for any of the uses of the State." The taxes levied for State purposes by chapter 345, Public Laws of 1929, are (1) Taxes on Inheritances; (2) License Taxes on trades, professions and occupations; (3) Taxes on Franchises; and (4) Taxes on Incomes. License taxes are imposed on persons, firms and corporations engaged in certain businesses or occupations in this State, and are levied for the privilege of carrying on the business, exercising the privilege, or doing the act named. Section 100. Persons, firms or corporations subject to the license taxes imposed by said statute in Schedule B, are classified for the purpose of such taxation, the amount of the tax being in most instances graduated in accordance with such classification. Provision is made by the statute for the assessment and collection of all the license taxes imposed thereby, all of which are payable to the State Treasurer, to be held by him for the payment of appropriations made by the General Assembly for State purposes.
The tax demanded of each of the plaintiffs by the defendant, Commissioner of Revenue, as required by law, and paid by said plaintiff, under protest, is a tax on the privilege of engaging in business in this State as a branch or chain store operator, as defined by the statute. This tax was valid, and plaintiffs having paid the same, are not entitled to recover in this action, unless, as they contend, the statute under which it was levied and collected is void, for that said statute contravenes some provisions of the Constitution of North Carolina, or of the United States.
Plaintiffs contend that the enactment by the General Assembly of this statute violated the rule of uniformity prescribed by the Constitution of North Carolina, for taxation. Const. of N.C. Art. V, sec. 3.
It has been held by this Court that while the rule of uniformity prescribed by the Constitution of this State for taxation, applies expressly only to taxes on property, the rule is so inherently just that taxes on trades, professions, franchises and incomes, although not subject to the rule, expressly, must be imposed, levied, and assessed in accordance therewith, to the end that there shall be no unjust or arbitrary discrimination in this State with respect to such taxes. The principle of "equal rights to all, and special privileges to none," is fundamental, and must be recognized as such in the levy, assessment and collection of all taxes in this State. A tax levied by the General Assembly on trades, professions, franchises or incomes in violation of the rule of uniformity, and *Page 439 
resulting in unjust or arbitrary discriminations, would be so inconsistent with natural justice, that its collection would be restrained as unconstitutional, or, if paid, would be ordered refunded to the taxpayer, for the reason that he would thereby be deprived of the equal protection of the law. Thus in S. v. Williams, 158 N.C. 610, 73 S.E. 1000, Walker,J., says that this Court has held that the rule of uniformity applies to the taxes which the General Assembly is expressly empowered by the Constitution to levy upon trades, professions, franchises or incomes, although there are no express words to that effect in the Constitution. He cites Gatlin v. Tarboro, 78 N.C. 119, and Worth v. R. R., 89 N.C. 291. This principle has been recognized by the General Assembly of this State, in imposing these taxes. Tea Company v. Doughton, 196 N.C. 145,144 S.E. 701. Instances in which this Court has held that there had been a violation of this principle are few; in such cases, the application of the principle, rather than the principle itself, has been brought in question. In no case has there been an apparent purpose on the part of the General Assembly to violate the rule of uniformity. In each case, the statute imposing the tax has been held void by this Court, because its effect, and not its purpose, was to violate the rule, and thus to result in an unjust and arbitrary discrimination.
It has also been held by this Court in accordance with well-settled principles, that classification of subjects of such taxation, when reasonably and not arbitrarily made, is not a violation of the rule of uniformity, resulting in unjust and arbitrary discrimination. Thus in S. v.Stevenson, 109 N.C. 730, 14 S.E. 385, Clark, J., says: "The power to select particular trades or occupations and subject them to a license tax cannot be denied to the Legislature — nor the power to tax such trades according to different rules, provided the rule in regard to each business is uniform. . . . Indeed, there can be, strictly speaking, no uniform, proportional and ad valorem tax on all trades, professions, franchises and incomes, taken together, because they are so dissimilar that there is no practical means of arriving at what should be a uniform tax common to them all. . . . It is within the legislative power to define the different classes, and to fix the license tax required of each class. All the licensee can demand is that he shall not be taxed at a different rate from others is the same occupation as `classified' by legislative enactment." Again in Land Co. v. Smith, 151 N.C. 70, 65 S.E. 641, Hoke,J., says: "The power of the Legislature in this matter of classification is very broad and comprehensive, subject only to the limitation that it must appear to have been made upon some `reasonable ground — something that bears a just and proper relation to the attempted classification, and not a mere arbitrary selection' — and under numerous and well-considered, and authoritative decisions the classification made in this instance must be upheld and approved. Lacy v. Packing Co., *Page 440 134 N.C. 567, 47 S.E. 53; S. v. Stevenson, 109 N.C. 730,14 S.E. 385; S. v. Powell, 100 N.C. 525, 6 S.E. 424; Gatlin v. Tarboro,78 N.C. 119; State R. R. Tax Cases, 92 U.S. 575." A classification made for purposes of taxation, therefore, in order to avoid condemnation for that it violates the rule of uniformity, must not be arbitrary, unreasonable or unjust. It must not result in unjust, unreasonable or arbitrary discrimination. There must be some real and substantial difference to justify the classification, when made for the purpose of imposing a license tax on all who fall within one class, without imposing a like tax on all who fall within another class. Tea Company v. Doughton, supra.
When the classification is founded on some real and substantial difference, and is therefore reasonable and not arbitrary, a different rule for the taxation of subjects falling within the respective classes, may be adopted by the General Assembly. It is sufficient that the tax imposed shall be uniform as to all persons, firms or corporations falling within the same class. S. v. Williams, 158 N.C. 610, 73 S.E. 1000. Thus in S.v. Danenberg, 151 N.C. 718, 66 S.E. 301, Brown, J., says: "It appears to be well settled that unless the power to tax is transcended, the reasonableness, or unreasonableness of a tax levied exclusively for revenue, is a matter generally within the exclusive province of the legislative department of the State, and is not a matter for the courts; but when the license tax is demanded also as a police regulation, the courts will consider whether it is so unreasonable as to amount to a prohibition upon lawful vocations which cannot be prohibited. Tiedeman on Police Powers, p. 277; S. v. Hunt, 129 N.C. 688, 40 S.E. 216; Winstonv. Beeson, 135 N.C. 277, 47 S.E. 457." When a classification has been made by the General Assembly, for the purpose of imposing license taxes on trades, professions, franchises or incomes, solely for the purpose of raising revenue, this Court will not hold the classification invalid, unless it shall appear, clearly and unmistakably, that the classification is unreasonable and arbitrary, resulting in an unjust discrimination. Unless it shall so appear, the classification will be upheld and the tax imposed adjudged valid, notwithstanding the contention that its imposition violated the rule of uniformity.
Plaintiffs contend that the enactment by the General Assembly of this State of section 162 of chapter 345, Public Laws of North Carolina, session 1929, violated section 1 of the Fourteenth Amendment to the Constitution of the United States, which provides that no State shall "deprive any person of life, liberty or property without due process of law"; or "deny to any person within its jurisdiction the equal protection of the laws."
The principle, upon which these prohibitions upon action by a State are founded, when applied to laws enacted by the Legislature of a State, *Page 441 
for the purpose of raising revenue, is similar to, if not identical with, that upon which the General Assembly of this State is forbidden to impose taxes on trades, professions, franchises or incomes, as well as upon property, in violation of the rule of uniformity, as properly interpreted and applied. It is subject to the same limitations as those which have been imposed by the law of this State upon the General Assembly with respect to the enactment of laws levying taxes. It does not forbid classification of the subjects of taxation by the General Assembly, provided there is some real and substantial basis for the classification. Thus, in Ohio Oil Co. v.Conway, 50 S.C. 310, 74 L.Ed., 456, decided on 14 April, 1930, Mr. ChiefJustice Hughes says:
"The applicable principles are familiar. The states have a wide discretion in the imposition of taxes. When dealing with their proper domestic concerns, and not trenching upon the prerogatives of the national government or violating the guaranties of the Federal Constitution, the States have the attribute of sovereign powers in devising their fiscal systems to insure revenue and foster their local interests. The states, in the exercise of their taxing power, as with respect to the exertion of the other powers, are subject to the requirements of the due process and the equal protection clauses of the Fourteenth Amendment, but that amendment imposes no iron rule of equality, prohibiting the flexibility and variety that are appropriate to schemes of taxation. The State may tax real and personal property in a different manner. It may grant exemptions. The State is not limited to ad valorem taxation. It may impose different specific taxes upon different trades and professions and may vary the rates of excise upon various products. In levying such taxes, the State is not required to resort to close distinctions or to maintain a precise, scientific uniformity with reference to composition, use or value. To hold otherwise would be to subject the essential taxing power of the State to an intolerable supervision, hostile to the basic principles of our government and wholly beyond the protection which the general clause of the Fourteenth Amendment was intended to assure. Bell's Gap R. Co. v. Pennsylvania,134 U.S. 232, 237, 33 L.Ed., 892, 895, 10 Sup. Ct. Rep., 533; Magoun v.Illinois Trust Sav. Bank, 170 U.S. 283, 293, 42 L.Ed., 1037, 1042,18 Sup. Ct. Rep., 594; Southwestern Oil Co. v. Texas, 217 U.S. 114, 121,54 L.Ed., 688, 692, 30 Sup. Ct. Rep., 496; Brown-Forman Co. v. Kentucky,217 U.S. 563, 573, 54 L.Ed., 883, 887, 30 Sup. Ct. Rep., 578; Sunday LakeIron Co. v. Wakefield Twp., 247 U.S. 350, 353, 62 L.Ed., 1154, 1156,38 Sup. Ct. Rep., 495; Heisler v. Thomas Colliery Co., 260 U.S. 245,67 L.Ed., 237, 43 Sup. Ct. Rep., 83; Oliver Iron Min. Co. v. Lord,262 U.S. 172, 179, 67 L.Ed., 929, 936,43 Sup. Ct. Rep., 526; Stebbins v. Riley, 268 U.S. 137, 142, 69 L.Ed., 884, 44 A.L.R., 1454, 45 Sup. Ct. Rep., 424. *Page 442 
"With all this freedom of action, there is a point beyond which the State cannot go without violating the equal protection clauses. The State may classify broadly the subjects of taxation, but in doing so it must proceed upon a rational basis. The State is not at liberty to resort to a classification that is palpably arbitrary. The rule is generally stated to be that the classification `must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike.' F. S. RoysterGuano Co. v. Virginia, 253 U.S. 412, 415, 64 L.Ed., 989, 990,40 Sup. Ct. Rep., 560; Louisville Gas E. Co. v. Coleman, 277 U.S. 32, 37,72 L.Ed., 770, 773, 48 Sup. Ct. Rep., 423;Air-Way Electric Appliance Corp. v. Day,266 U.S. 71, 85, 69 L.Ed., 169, 177, 45 Sup. Ct. Rep., 12;Schlesinger v. Wisconsin, 270 U.S. 230, 240, 70 L.Ed., 557, 564, 43 A.L.R., 1224, 46 Sup. Ct. Rep., 260."
The purpose of the provisions of section 1 of the Fourteenth Amendment relied upon by plaintiffs in this action, is to prohibit the States from unjustly discriminating against persons subject to their jurisdiction, and from thereby depriving them of life, liberty or property, without due process of law, or of the equal protection of law. For this reason, classification made by a State, for purposes of taxation, or of regulation, under the police power, are not prohibited, when made upon just and reasonable grounds, and founded on real and substantial differences. Laws which do not result in unreasonable and arbitrary discrimination are not in violation of section 1 of the Fourteenth Amendment.
In view of the foregoing well-settled principles of constitutional law, both State and Federal, applicable to the question presented for decision by this appeal, we are of opinion that there was no error in the finding and conclusion of the court below that the classification made by the General Assembly of this State, in section 162 of chapter 345, Public Laws of North Carolina, session 1929, of the business of maintaining and operating branch or chain stores, as therein defined, exclusively for purposes of taxation, is neither unreasonable nor arbitrary; that there is a real and substantial difference between merchants who exercise the privilege of carrying on their business in this State, by means of two or more stores, and those who maintain and operate only one store, and that this difference appears on the face of the statute, without regard to the findings of fact made by the court; that the imposition of a license tax on one class, without the imposition of a like tax on the other class of merchants, is not an unjust, unreasonable or arbitrary discrimination between the two classes, for the reason that merchants who are required to obtain licenses, and to pay the tax, have and exercise a more valuable privilege than those who are required to do neither; that therefore, the statute is not in violation of either the State or the Federal Constitution. *Page 443 
The statute was enacted by the General Assembly in the exercise of a wide and comprehensive discretion vested in it as the legislative department of the State Government, and is in pursuance of the well-settled policy of the State with respect to its system of taxation. The classification in accordance with which the plaintiffs were required to pay the license taxes imposed by the statute, is neither capricious nor arbitrary. Brown-Forman Co. v. Kentucky, 217 U.S. 54, L.Ed., 883. The tax is not unreasonable or discriminatory. Ohio Oil Co. v. Conway, supra. The judgment must, therefore, be affirmed.
A comparison of the statute involved in this action with that which we held void and unconstitutional in Tea Co. v. Doughton, 196 N.C. 145,144 S.E. 701, will disclose, we think, a vital and essential distinction between the two statutes. The tax imposed by section 162 of chapter 80, Public Laws 1927, was not levied on chain store operators, per se, as is the case in section 162 of chapter 345, Public Laws 1929. In the former statute, the license was required, and the tax imposed upon every person, firm or corporation engaged in the business of maintaining and operating six or more stores, with an exemption from any tax of those who maintained and operated five or less stores. In the latter statute there is no exemption, and no "retroactive tax." The tax is so imposed that merchants who are classified as branch or chain store operators, are on an equality with respect to one store, with merchants who are not branch or chain store operators. Here is no discrimination, which as Clarkson, J., says, in his concurring opinion in Tea Company v. Doughton, supra, is the vice in the former statute. In the latter statute the classification is made and the tax imposed in accordance with the value of the privilege obtained by the license. Clark v. Maxwell, 197 N.C. 604, 150 S.E. 190. Both the classification and the tax are valid, and plaintiffs are not entitled to recover the sums paid by them, respectively, to the defendant. The judgment is
Affirmed.