JEFFREY SMITH ET. AL, PLAINTIFFS V. THE CITY OF FAYETTEVILLE, DEFENDANT

No. COA11-1263

(Filed 1 May 2012)

**1. Appeal and Error—notice of appeal—sufficient for review**
    Plaintiffs gave sufficient notice of appeal in a privilege license tax case to vest the Court of Appeals with jurisdiction to consider both the grant of defendant's summary judgment motion and the denial of plaintiffs' summary judgment motion.

**2. Taxation—privilege license tax—insufficient evidence tax was unreasonable—conflicting evidence**
    The trial court did not err in a case involving a privilege license tax by granting summary judgment in favor of defendant City and denying summary judgment for a majority of plaintiffs. Those plaintiffs failed to present sufficient evidence to rebut the presumption that the license tax was reasonable and not prohibitive. The trial court erred by granting summary judgment in favor

of the City as to the remaining plaintiffs as there was conflicting evidence on the issue of whether the City's privilege license tax on those plaintiffs' businesses was reasonable and not prohibitory.

Appeal by Plaintiffs from order entered 15 August 2011 by Judge Russell J. Lanier, Jr. in Cumberland County Superior Court. Heard in the Court of Appeals 22 February 2012.

> *The Law Offices of Lonnie M. Player, Jr., PLLC, by Lonnie M. Player, Jr., for Plaintiffs-appellants.*

> *City Attorney for the City of Fayetteville Karen M. McDonald, Assistant City Attorney for the City of Fayetteville Brian K. Leonard, and Parker, Poe, Adams & Bernstein L.L.P., by Anthony Fox and Benjamin Sullivan, for Defendant-appellee.*

HUNTER, JR., Robert N., Judge.

Jeffrey Smith, et al. ("Plaintiffs") appeal an order granting summary judgment to the City of Fayetteville (the "City") ("Defendant"). Plaintiffs argue (1) the trial court erred by granting summary judgment in favor of the City and denying Plaintiffs' summary judgment motion and (2) the ordinance at issue is unenforceable against Plaintiffs. We affirm the trial court's grant of the City's motion for summary judgment and denial of Plaintiffs' motion for summary judgment on the issues of whether the privilege license tax unlawfully classifies and exempts property for taxation, violates the rule of uniformity, and is preempted by federal law. With respect to Plaintiffs Tanya Marion, Thi Quoc Tran, Triumph Entertainment, LLC, Tim Moore, Douglas Guy, Danny Dye, Beverly K. Harris, Harris Management Services, Inc., JB&H Consulting, Inc., Charles Shannon Silver, and Randy Griffin, we affirm the trial court's grant of the City's motion for summary judgment and denial of Plaintiffs' motion for summary judgment on the issue of whether the privilege license tax is reasonable and not prohibitory. However, we reverse the trial court's order granting summary judgment for the City and against Plaintiffs Jeffrey Smith, Chris Marion, and Crafty Corner, LLC and remand for trial for only these Plaintiffs and only on the issue of whether the privilege license tax is reasonable and not prohibitory.

## I. Facts & Procedural Background

Plaintiffs sell blocks of internet usage and telephone time at competitive rates to customers in the City. When a customer purchases time, the customer receives a sweepstakes entry. The entry has a pre-

determined prize that can be revealed using computers located on Plaintiffs' business premises. Some of these computers are connected to the internet while others are not.

The City is entitled to create and annually collect privilege license taxes pursuant to N.C. Gen. Stat. §§ 160A-211 and 105-109(e), respectively. For the fiscal year of 2009 to 2010, the City imposed a municipal privilege tax for miscellaneous businesses, including Plaintiffs' businesses, of $50.00. On 12 July 2010, the City enacted an ordinance instituting a privilege license tax on businesses conducting "electronic gaming operations" of $2,000 per business location and $2,500 per "computer terminal" conducting such gaming operations within each business location (the "Ordinance"). Under the Ordinance, "electronic gaming operations" include:

> [a]ny business enterprise, whether as a principal or accessory use, where persons utilize electronic machines, including, but not limited to, computers and gaming terminals (collectively, the "machines"), to conduct games of chance, including sweepstakes, and where cash, merchandise or other items of value are redeemed or otherwise distributed, whether or not the value of such distribution is determined by electronic games played or by predetermined odds.

The City avers it instituted a privilege license tax specific to electronic gaming operations because these businesses uniquely burden City resources, including law enforcement resources.

On 29 September 2010, Plaintiffs filed this action seeking a declaratory judgment enjoining the City from enforcing the privilege license tax against them. After filing the complaint, Plaintiffs obtained a preliminary injunction, relieving them from paying the 2010-2011 tax until after the resolution of this action. The City answered Plaintiffs' complaint and asserted counterclaims against each Plaintiff to recover the privilege license taxes for 2010-2011. On 8 July 2011, Plaintiffs filed a motion for summary judgment. On 15 July 2011, the City filed a cross-motion for summary judgment. On 25 July 2011, both motions were heard by Judge Russell J. Lanier, Jr. in Cumberland County Superior Court. Judge Lanier, Jr. entered an order 15 August 2011 denying Plaintiffs' motion for summary judgment and granting the City's motion for summary judgment. Plaintiffs entered timely notice of appeal 15 August 2011 of Judge Lanier, Jr.'s order granting Defendant's motion for summary judgment.

## II. Jurisdiction & Standard of Review

[1] Appellants appeal from the final judgments of a superior court, and appeal therefore lies with this Court pursuant to N.C. Gen. Stat. § 7A-27(b) (2011).

At the outset, we note that although cross motions for summary judgment were filed at the trial court level and the trial court issued a single order granting Defendant's motion for summary judgment *and* denying Plaintiffs' motion for summary judgment, Plaintiffs' notice of appeal appeals only "the Order granting summary judgment to Defendant in this matter." In all cases before this Court, the notice of appeal "shall designate the judgment or order from which appeal is taken." N.C. R. App. P. 3(d). Moreover, "[p]roper notice of appeal is a jurisdictional requirement that may not be waived." *Chee v. Estes*, 117 N.C. App. 450, 452, 451 S.E.2d 349, 350 (1994). As such, "the appellate court obtains jurisdiction only over the rulings specifically designated in the notice of appeal as the ones from which the appeal is being taken." *Id.*; *see also Craven Reg'l Med. Auth. v. N.C. Dep't of Health & Human Servs.*, 176 N.C. App. 46, 58, 625 S.E.2d 837, 845 (2006). However,

> "[t]he [Federal] courts of appeals have in the main consistently given a liberal interpretation to the requirement of Rule 3(c) that the notice of appeal designate the judgment or part thereof appealed from. The rule is now well settled that a mistake in designating the judgment, or in designating the part appealed from if only a part is designated, should not result in loss of the appeal as long as the intent to appeal from a specific judgment can be fairly inferred from the notice and the appellee is not misled by the mistake."

*Smith v. Indep. Life Ins. Co.*, 43 N.C. App. 269, 274, 258 S.E.2d 864, 867 (1979) (citation omitted) (second alteration in original) (where this Court held that the plaintiff's notice of appeal, although specifying appeal from only one part of an order, showed sufficient intent to appeal the entire order). In the case at bar, the order from which Plaintiffs appealed both granted Defendant's motion for summary judgment and denied Plaintiffs' motion for summary judgment. However, the specific language of Plaintiffs' notice of appeal provided: "Plaintiffs . . . hereby give Notice of Appeal to the Court of Appeals of North Carolina from the Order *granting summary judgment to Defendant in this matter*, entered August 15, 2011, in the Superior Court of Cumberland County, North Carolina by the Honorable

Russell J. Lanier, Jr." (Emphasis added.) Although the notice appealed only the part of the order granting summary judgment to Defendant, Plaintiffs' intent could not have been to challenge only that portion of the order as Plaintiffs' brief clearly discusses arguments on the denial of Plaintiffs' summary judgment motion as well. Additionally, Defendant does not allege Plaintiffs' notice of appeal did not put it on notice that Plaintiffs were appealing the entire order entered by Judge Lanier, Jr. on 15 August 2011. Therefore, Plaintiffs gave sufficient notice of appeal to vest this Court with jurisdiction to consider both the grant of Defendant's summary judgment motion and the denial of Plaintiffs' summary judgment motion.

Our Supreme Court has stated the following standard of review for cases where the parties filed cross-motions for summary judgment:

> The instant case presents cross-motions for summary judgment. Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." The trial court may not resolve issues of fact and must deny the motion if there is a genuine issue as to any material fact. Moreover, "all inferences of fact . . . must be drawn against the movant and in favor of the party opposing the motion." The standard of review for summary judgment is *de novo*.

*Forbis v. Neal*, 361 N.C. 519, 523–24, 649 S.E.2d 382, 385 (2007) (citations omitted) (alteration in original).

### III. Analysis

[2] Plaintiffs contend the trial court erred in granting summary judgment for the City and denying summary judgment for Plaintiffs because the Ordinance in question is unenforceable under several distinct legal theories.

While Plaintiffs' appeal was pending, this Court addressed some of the same arguments presented by Plaintiffs' appeal in another decision. *See IMT v. City of Lumberton*, ___ N.C. App. ___, ___, ___ S.E.2d ___, ___ (No. COA11-813) (February 21, 2012). When this Court is presented with identical facts and issues, we are bound to reach the same conclusions as prior panels of this court. *In re Civil Penalty*, 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989). Thus, for the reasons stated in *IMT*, we hold Plaintiffs' arguments that the Ordinance

unlawfully classifies and exempts property for taxation, violates the rule of uniformity, and is preempted by federal law are without merit.

We do, however, address Plaintiffs' argument that the Ordinance is unconstitutional because it imposes an unjust and inequitable taxation scheme as it is so high it amounts to a prohibition of their businesses. Although we addressed the unjust and inequitable taxation scheme issue under our Constitution in *IMT*, we are not bound by *IMT* on this issue in the instant case. In *IMT*, the business owners failed to present evidence sufficient to prove the privilege license tax was prohibitive of their businesses. ___ N.C. App. at ___, ___ S.E.2d at ___. Here, however, a few Plaintiffs submitted affidavits on the prohibitory effect the City's tax has had on their businesses and on similarly situated businesses, and, therefore, we conduct an analysis different from that of *IMT* as to whether the City's privilege license tax imposes an unjust and inequitable taxation scheme.

The North Carolina Constitution provides, "The power of taxation shall be exercised in a just and equitable manner." N.C. Const. Art. V, § 2(1). This provision was passed by the General Assembly in 1935 (Act of 1935, ch. 248, 1935 N.C. Sess. Laws 270) and adopted at the general election of 1936. *North Carolina Government, 1585-1979: A Narrative and Statistical History* at 920-21 (Issued by Thad Eure, Secretary of State; John L. Cheney, Jr., ed.; Raleigh, NC 1981) (votes cast on November 3, 1936 ratified section 1 of chapter 248, 1935 N.C. Public Laws 270, by a vote of 242,899 to 152,516). The goal was to add a sense of "equality and fair play" to the General Assembly's power to tax:

> The pervading principle to be observed by the General Assembly in the exercise of these powers is equality and fair play. It is the will of the people of North Carolina, as expressed in the organic law, that justice shall prevail in tax matters, with "equal rights to all and special privileges to none". Of course, it is recognized that in devising a scheme of taxation, "some play must be allowed for the joints of the machine" and many practical inequalities may exist, still they are not to result from obvious discrimination. The goal must be kept in sight. The thesis of the Constitution is, that all similarly situated are entitled to the same treatment from the government they support.

*Rockingham County v. Bd. of Trustees of Elon Coll.*, 219 N.C. 342, 344-45, 13 S.E.2d 618, 620 (1941). The provision "is a limitation upon the legislative power, separate and apart from the limitation con-

tained in the Law of the Land Clause in Article I, § 19, of the Constitution of North Carolina, and the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States." *Foster v. N.C. Med. Care Comm'n*, 283 N.C. 110, 126, 195 S.E.2d 517, 528 (1973).

Plaintiffs cite to several cases in support of their position that the City's taxation scheme is not just and equitable because the tax is so high it amounts to a prohibition of their businesses. However, Plaintiff cites to only one relevant case that was decided *after* the addition of the "just and equitable" taxation provision to our Constitution and that interprets the provision. *See Nesbitt v. Gill*, 227 N.C. 174, 41 S.E.2d 646 (1947). Beyond *Nesbitt*, we can find no other appellate authority providing this Court with manageable standards as to whether a privilege license tax has been exercised in a "just and equitable manner."[1] Dean Henry Brandeis discerned the impact of this language in *Popular Government*, noting that opponents to the provision felt it would

> leave the people without any guarantees against the unwise use of the taxing power by the legislature, as the requirement that taxes be levied only "in a just and equitable manner" . . . affords less protection than the part of the Federal Constitution which prohibits the taking of property without due process of law—a prohibition which is extremely indefinite.

Henry Brandeis, Jr., *Taxation, Revenue, and Public Debt*, Vol. 1 Popular Government No. 4, The Proposed Constitution for North Carolina, June 1934, at 93. However, Dean Brandeis proffered no guide to interpretation of the provision. Moreover, our review of the House and Senate journals lends us no aid in the interpretation of the section; any legislative history research, based upon the usual sources, is unavailing.

However, Plaintiffs also cite to cases decided *before* the 1936 amendment that added the "just and equitable" tax provision. These cases determine not if the privilege license tax is "just and equitable" but if it is "unreasonable." *See, e.g., State v. Danenberg*, 151 N.C. 718,

---

1. We recognize there is an unpublished Business Court opinion that interprets the "just and equitable" taxation provision of our Constitution as it applies to a corporation, yet it is both factually distinguishable from the instant case and only provides persuasive authority for this Court on the issue at hand. *See Delhaize Am., Inc. v. Lay*, 06 CVS 08416, 2011 WL 1679628 (N.C. Super. Jan. 12, 2011). Thus, it is unhelpful in our analysis.

721, 66 S.E. 301, 303 (1909); *State v. Razook*, 179 N.C. 708, 710, 103 S.E. 67, 68 (1920); and *Clark v. Maxwell*, 197 N.C. 604, 607, 150 S.E. 190, 192 (1929). Defendant cites to a case decided after the 1936 amendment, but even this case determines whether a privilege license tax is "unreasonable" and not "just and equitable." *See E. B. Ficklen Tobacco Co. v. Maxwell*, 214 N.C. 367, 372, 199 S.E. 405, 409 (1938). Therefore, we hold that this common law prohibition on unreasonable taxation schemes is the same or substantially the same as our Constitutional provision requiring taxes to be exercised in a "just and equitable manner." Accordingly, we refer not only to *Nesbitt* but to the common law decided before the 1936 amendment to inform us in analyzing this issue.

The court must first determine whether the activity to be taxed is legal. *See Patterson v. S. Ry. Co.*, 214 N.C. 38, 47, 198 S.E. 364, 370 (1938) (holding that a business was not illegal and, as such, was not barred from recovery). If so, under the common law that pre-dates the "just and equitable" taxation provision of our constitution, the court must determine whether the city instituting the tax has the statutory authority to do so. *See Danenberg*, 151 N.C. at 720, 66 S.E. at 302 (where the first question in determining whether a privilege license tax on beer was discriminatory and prohibitive was whether Charlotte had the authority to enact the tax in the first place).

If the activity taxed is legal and the city imposing the tax had authority to do so, only then should the court determine if the amount of the tax is unreasonable and prohibitory. *Id.* at 721, 66 S.E. at 303; *Razook*, 179 N.C. at 710, 103 S.E. at 68. We note there is a presumption that privilege license taxes are reasonable and not prohibitory. *Razook*, 179 N.C. at 711, 103 S.E. at 69 (" 'All presumptions and intendments are in favor of the validity of the [privilege license] tax[,] . . . [and] the mere amount of the tax does not prove its invalidity.' " (citation omitted)). The " 'power of taxation is very largely a matter of legislative discretion' and . . . 'in respect to the method of apportionment as well as the amount, it only becomes a judicial question in cases of palpable and gross abuse.' " *E. B. Ficklen Tobacco Co.*, 214 N.C. at 372, 199 S.E. at 409 (citation omitted).

A plaintiff, however, can rebut the presumption that a privilege license tax is reasonable and not prohibitory. To do so, the plaintiff must show the tax is so high that it amounts to a prohibition of the plaintiff's particular business, effectively eliminating all similar businesses within the city. *Razook*, 179 N.C. at 710, 103 S.E. at 68; *see also Danenberg*, 151 N.C. at 721, 66 S.E. at 303 ("As municipal corpora-

tions have no inherent police powers and can exercise only those conferred by the State, it of necessity follows that, in the absence of express charter authority, they cannot directly by taxation prohibit or destroy a business legalized by the State.") and N.C. Const. art. I, § 1 (listing "fruits of their own labor" as an inalienable right endowed to all persons).

To show a privilege license tax is so high it amounts to a prohibition of the plaintiff's business, the plaintiff must show the tax, in relation to the plaintiff's gross revenues, prevents the plaintiff from operating a profitable entity. *See Danenberg*, 151 N.C. at 722, 66 S.E. at 303. This Court recognizes that "evidence regarding the effect on the [individual] business of complying with the ordinance is typically unhelpful because negligence, incompetence, or other considerations could play into the success of the licensee's business." *IMT*, ___ N.C. App. at ___, ___ S.E.2d at ___ (citing *Danenberg*, 151 N.C. at 722, 66 S.E. at 303). However, our Supreme Court is clear that a privilege license tax should reasonably relate to the profits of the business. *Nesbitt*, 227 N.C. at 180, 41 S.E.2d at 650. Our Supreme Court has also held that a privilege license tax may be higher for businesses that are more profitable. *Clark*, 197 N.C. at 607, 150 S.E. at 192.

In addition to providing evidence of the prohibitive effect of the privilege license tax on the particular plaintiff's gross revenues, the plaintiff must also show it is more likely than not that the tax is also prohibitive of similarly situated businesses within the same city. To do this, the plaintiff may join these similarly situated businesses as parties in the case challenging the tax or submit affidavits from owners of similarly situated businesses in which the owners aver that the tax has prevented them from running a profitable business, presenting evidence of their gross revenues in relation to the tax as support. Evidence of the confiscating nature of the privilege license tax on the plaintiff's business as well as similarly situated businesses may also take into account the size of the city in which the license tax is imposed.

> The territory and population to be supplied is an important consideration in estimating the value of the right conferred. It is worth a great deal more to be permitted to conduct a business of this kind in a large city than in a small town, and a license tax that would be within the bounds of reason when imposed in [a big city] might be unreasonable and prohibitive if imposed in a small place.

*Danenberg,* 151 N.C. at 722, 66 S.E. at 303.

Additional evidence the plaintiff may but is not required to present to show the license tax is unreasonable and prohibitory is comparison evidence of the amount of the tax with the amount of the privilege license tax the city has charged in the past on the plaintiff's business. The plaintiff may also put forth comparison evidence of the amount of the current privilege license tax imposed on the plaintiff by the city with the amount in privilege license taxes the city imposes on other businesses in the city. If the current amount of the privilege license tax is statistically significantly higher than the amount imposed on the plaintiff's business in the past or the amount charged on other businesses within the same city, this evidence helps rebut the presumption that the privilege license tax is reasonable and not prohibitory.

Once the plaintiff has presented sufficient evidence to rebut the presumption that the privilege license tax is reasonable and not prohibitory, the burden of production shifts to the city imposing the tax to show the challenged tax is nevertheless reasonable and not prohibitory. Two non-exclusive ways to accomplish this include showing: (1) the tax is reasonably related to the cost of increased police regulation of the taxed business or (2) the plaintiff's inability to profit is due to his negligence in running his business and not because the tax is prohibitive.

"[T]he cost of police surveillance and the propriety of reducing the number of [businesses] in order that such surveillance and supervision may be more effective and less costly" is an important consideration to determine if the challenged privilege license tax is reasonable. *Danenberg,* 151 N.C. at 722, 66 S.E. at 303. If the sale of a good or service "furnishes extraordinary opportunities for the violation of [state law]," it becomes the municipality's "undoubted duty to regulate and supervise it." *Id.* "One of the recognized methods of regulation is by license taxation which will reduce the area and extent of the business without annihilating it and thus bring it more easily within municipal control, as well as provide funds for the expense the municipality incurs." *Id.* at 723, 66 S.E. at 304 (One of the most effective ways of restraining and limiting the number of "near beer saloons" in a city was to impose a heavy license fee on them.). If more police regulation of a business is required due to the nature of the business, it follows that a privilege license tax on that particular business may be higher to help cover such regulation costs. *See id.* (where our Supreme Court held a privilege license tax on establish-

ments that sold "near beer" to be reasonable in part because of the added police supervision required of those establishments to maintain order).

To show the privilege license tax is not prohibitive and unreasonable, the city may also present evidence that the plaintiff's inability to run a profitable business is due not to the license tax but to the plaintiff's own negligence or incompetence or some other considerations. *See IMT*, ___ N.C. App. at ___, ___ S.E.2d at ___ (citing *Danenberg*, 151 N.C. at 722, 66 S.E. at 303). This may be accomplished by submitting evidence on the day-to-day operations of the plaintiff's business or by showing how other similarly situated businesses are profitable, even after paying the privilege license tax.

Once conflicting evidence is received by the trial court on the issue of whether the privilege license tax is reasonable and not prohibitory, the issue becomes a material question of fact reserved for the fact-finder. It is therefore inappropriate for a trial court to decide such a matter on summary judgment as a matter of law.

In sum, our review of the body of law on this issue provides the following analysis to determine if a privilege license tax is reasonable and not prohibitory. The first step is to determine if the activity taxed is legal, and, if so, whether the city instituting the tax had the authority to do so. If so, the tax enjoys a presumption of reasonableness. To rebut this presumption, the plaintiff must present evidence of his business's gross revenues, indicating that the tax is so high it prevented the plaintiff from conducting a profitable business. The plaintiff must also present evidence that the tax has prevented similarly situated businesses from being profitable. If the plaintiff successfully rebuts the presumption, the city instituting the tax may put forth evidence to show the tax is nevertheless reasonable and not prohibitory because either (1) the tax is reasonably related to the cost of increased police regulation of the taxed business or (2) the plaintiff's inability to profit is due to his negligence in running his business and not because the tax is prohibitive. If the plaintiff successfully rebuts the presumption and the city presents evidence contradicting the plaintiff's evidence, the issue of whether the privilege license tax is reasonable and not prohibitory becomes a material question of fact reserved for the fact-finder.

Here, although N.C. Gen. Stat. § 14-306.4 (2011) holds that sweepstakes using an "entertaining display" are prohibited, this ban was recently held by this Court to be unconstitutional. *See Hest*

*Technologies, Inc. v. State ex rel. Perdue*, ___ N.C. App. ___, ___, ___ S.E.2d ___, ___ (COA11-459) (Mar. 6, 2012) ("[T]he portion of N.C. Gen.Stat. § 14–306.4 which criminalizes the dissemination of a sweepstakes result through the use of an entertaining display must be declared void, as it is unconstitutionally overbroad."). Thus, as the law stands, Plaintiffs' businesses conduct legal activities. ·

Next, we hold the City had the authority to enact the Ordinance instituting the privilege license tax on Plaintiffs' businesses. *See* N.C. Gen. Stat. § 160A-211(a) (2011) ("Except as otherwise provided by law, a city shall have power to levy privilege license taxes on all trades, occupations, professions, businesses, and franchises carried on within the city."). As such, there is a presumption that the privilege license tax instituted on Plaintiffs' businesses by the City is reasonable and not prohibitive.

To rebut this presumption, each Plaintiff must have presented evidence of his business's gross revenues, indicating that the tax is so high it prevents him from conducting a profitable business. Plaintiffs must also present evidence that the tax has prevented similarly situated businesses from being profitable. However, Plaintiffs Tanya Marion, Thi Quoc Tran, Triumph Entertainment, LLC, Tim Moore, Douglas Guy, Danny Dye, Beverly K. Harris, Harris Management Services, Inc., JB&H Consulting, Inc., Charles Shannon Silver, and Randy Griffin did not present sufficient evidence to rebut the presumption that the license tax is reasonable and not prohibitive. These particular Plaintiffs presented no evidence besides non-specific, widespread assertions that the tax would prohibit their businesses. For example, the Plaintiffs' complaint states in a general manner, "In most cases, the revised privilege tax bills received by Plaintiffs from Defendant accounted for many multiples more than the total amount of gross revenue generated by Plaintiffs throughout the entire existence of their businesses." However, no specific evidence on how the tax affected these particular Plaintiffs' revenues was presented. As such, we affirm the trial court's order granting summary judgment to the City and denying summary judgment to Plaintiffs Tanya Marion, Thi Quoc Tran, Triumph Entertainment, LLC, Tim Moore, Douglas Guy, Danny Dye, Beverly K. Harris, Harris Management Services, Inc., JB&H Consulting, Inc., Charles Shannon Silver, and Randy Griffin. *See IMT*, ___ N.C. App. at ___, ___ S.E.2d at ___ (where this Court could not hold the privilege license tax was prohibitive when the appellants did not provide a "sufficient record of proof

to show governmental action was taken to deprive Appellants of a constitutional right").

On the other hand, Plaintiffs Jeffrey Smith, Chris Marion, and Crafty Corner, LLC presented what we consider a sufficient record of evidence to rebut the presumption that the license tax is reasonable and not prohibitory. These Plaintiffs submitted affidavits to the trial court in which they detailed evidence of their particular business's gross revenues and net profits and asserted that payment of the tax would require them to close their businesses. These Plaintiffs further indicated they were informed the newly instituted privilege license fee was due several days *before* they were even notified by the City of the increase in the tax. These Plaintiffs claim that if they had received notice of the increased tax before it took effect, they may have decided to close their businesses to avoid the tax. However, they were not given any such opportunity. Each Plaintiff also presented evidence that the City required a full year's tax payment (1 July 2010 to 30 June 2011) and would not pro-rate the tax even though businesses with electronic sweepstakes games would be banned effective 1 December 2010. Moreover, the fact that over fifteen owners of businesses in the City joined as Plaintiffs in this matter constitutes some evidence that the tax was prohibitive on similarly situated businesses within the City. Additionally, Plaintiffs presented evidence that the revised minimum privilege license tax on their businesses was at least $4,500 while the previously imposed license tax was only $50, making the new amount charged 9,000 percent higher than the previously charged tax. Guided by the analysis provided above, we hold that such evidence is sufficient. to rebut the presumption that the City's privilege license tax on these particular Plaintiffs' businesses is reasonable and not prohibitory.

We further note the City put forth several affidavits that show the extent of police regulation required to regulate Plaintiffs' businesses. Defendant also presented evidence of the amount of the City's privilege license tax on Plaintiffs' businesses compared with the amounts other cities charge similar businesses in privilege license taxes, showing the City's tax on Plaintiffs' businesses is not an outlier when compared to other cities' taxes on internet sweepstakes businesses. With such conflicting evidence on the issue of whether the City's privilege license tax on Plaintiffs' businesses is reasonable and not prohibitory, we hold there is a genuine issue of material fact on this issue. Therefore, we hold the trial court erred in deciding this matter on summary judgment with respect to Plaintiffs Jeffrey Smith, Chris

Marion, and Crafty Corner, LLC. Accordingly, we reverse the trial court's order granting summary judgment to the City and denying summary judgment to Plaintiffs Jeffrey Smith, Chris Marion, and Crafty Corner, LLC.

### IV. Conclusion

For the foregoing reasons, we affirm the trial court's grant of the City's motion for summary judgment and denial of Plaintiffs' motion for summary judgment on the issues of whether the privilege license tax unlawfully classifies and exempts property for taxation, violates the rule of uniformity, and is preempted by federal law. With regard to Plaintiffs Tanya Marion, Thi Quoc Tran, Triumph Entertainment, LLC, Tim Moore, Douglas Guy, Danny Dye, Beverly K. Harris, Harris Management Services, Inc., JB&H Consulting, Inc., Charles Shannon Silver, and Randy Griffin, we also affirm the trial court's order granting summary judgment to the City and denying it to these Plaintiffs on the issue of whether the tax is just and equitable. However, with regard to Plaintiffs Jeffrey Smith, Chris Marion, and Crafty Corner, LLC, we reverse the trial court's grant of summary judgment in favor of the City and denial of summary judgment for these Plaintiffs on the issue of whether the City's tax is just and equitable of these Plaintiffs' businesses because there is a genuine issue of material fact on this issue. We remand this specific issue for trial but only for Plaintiffs Jeffrey Smith, Chris Marion, and Crafty Corner, LLC.

Affirmed in part; reversed and remanded in part.

Judges BRYANT and BEASLEY concur.